IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Rian N. Emmert | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| East Pennsboro Area School District | ) |
| Michael Sim, Individual | ) |
| | ) |
| Defendants. | ) |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Rian N. Emmert (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendants and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Rehabilitation Act of 1973 Section 504 (hereinafter, "Rehab Act") and the Fourth Amendment for Illegal Search and Seizure. Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that she pleads them pursuant to 28 U.S.C. §1367.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff brings this action against her former employer, East Pennsboro Area School District, (hereinafter "EPASD").

4. Plaintiff, is an adult female who, at all relevant times hereto, resided in the Commonwealth of Pennsylvania, Dauphin County, and was employed by EPASD.

5. EPASD is a school district in Cumberland County, Pennsylvania located at 890 Valley Street, Enola, PA 17025.

6. Defendant EPASD is a recipient of federal financial assistance through, *inter alia*, funded reading programs, special education and nutrition programs sponsored by, *inter alia*, the American Recovery and Reinvestment Act of 2009, other Federal Stimulus funds, and federal resources from which the Pennsylvania Department of Education advises the School District to use the money for additional nonrecurring expenses like purchasing equipment, teaching resources like books, and software.

7. Defendant, Michael Sim, (hereinafter "Mr. Sim") is an adult male who, at all relevant times hereto, resided in the Commonwealth of Pennsylvania and was

employed by EPASD as School Principal for East Pennsboro Middle School and was a supervisor of the Plaintiff.

8. Plaintiff alleges, *inter alia*, that she was discriminated against and/or retaliated against based on the exercise of her rights under the Rehab Act as more fully described below.

9. Further, that Plaintiff's rights were violated when she was forced to endure an invasion of her privacy and false imprisonment by her former Principal, Mr. Sim as more fully described below.

## UNDERLYING FACTS

10. Plaintiff commenced employment with EPASD on or about September 2007 as a 5th grade math teacher and 6th grade social studies teacher.

11. Plaintiff did not have any issues with her work environment until Mr. Sim was hired in 2014 as from 2014 to late 2018, Mr. Sim would frequently corner the Plaintiff asking about her personal life and make her feel very uncomfortable, creating a hostile work environment.

12. In or about October 2017, a student was caught consuming alcohol in Plaintiff's classroom and although the student was one of Plaintiff's student's, Plaintiff was not informed of any disciplinary action.

13. Therefore, Plaintiff took her concerns about not being informed to the building committee because she was not comfortable talking directly to Mr. Sim, due to his prior invasions of her personal privacy.

14. After Mr. Sim was notified of Plaintiff's concerns, he notified all staff members during a meeting (which Plaintiff attended) that the teacher whose student was found in her classroom drinking had dared to go to the building committee to complain about him, thus singling her out for ridicule and contempt among the faculty.

15. On or about October 10, 2017, the Plaintiff received a text message from Mr. Sim that he needed to speak to her after school. Later that day, he came to her classroom, shut her door and demanded she sit down while he stood over her while yelling at her and placing his hand in her face, causing her to fear for her safety.

16. In this inquisition, Mr. Sim angrily asked her why she he had missed the day before, to which Plaintiff explained that she was sick, that she had "pink eye" and that she did not produce a doctor's note because she already had drops from a prior doctor's visit for "pink eye."

17. Mr. Sim then irritably asked her why she was on Facebook on the day she was absent. This caused the Plaintiff extreme anxiety knowing he was trolling her Facebook site without justification.

18. When Plaintiff tried to explain this was private and ask him what he wanted, Mr. Sim began yelling and accusing Plaintiff stating, "How dare you discuss me with any one of my employees? You have no right!" (Referring to her complaint to the building committee about him).

19. Plaintiff began feeling very ill due to the personal attacks and because of his invasion into her private affairs, since he had obviously been checking her Facebook page without justification while she was absent.

20. Plaintiff's heart began to race and she tried to explain to him that she needed to leave but he refused to let her leave.

21. After the interrogation ended, Plaintiff went to the Emergency Room for heart palpitations as she felt she was having a heart attack.

22. The hospital subsequently released her with anxiety medication and a heart monitor which she was to wear due to the palpitations.

23. After 24 hours, her heart rate did not return to normal and she was referred to a Cardiologist, David Pawlush, M.D., whom at which point, prescribed a heart halter monitor which she wore until November 17, 2017 when she had an Echocardiogram and stress test conducted.

24. From October 18, 2017 – November 22, 2017, Plaintiff used sick and personal days for medical leave due to her heart issues.

25. Thereafter, Mr. Sim began ratcheting up his surveillance of the Plaintiff's activities both in the building and outside of her work.

26. In or about March 2018, Plaintiff received yet another text message from Mr. Sim, late on a Sunday night regarding a posting she made on Facebook.

27. Plaintiff took her concerns of his stalking behavior to her union representative and the next day one of Mr. Sim's friends, Corey Groff, asked her to complete an anonymous survey about her feelings regarding Mr. Sim.

28. Plaintiff, however, felt this may be a set up since Mr. Groff was close friends with Mr. Sim and she didn't understand why he would be the one giving her a test.

29. During the survey Mr. Groff audibly asked her questions requiring her to answer them while in his presence further exacerbating her heart palpitations and anxiety.

30. Later, Plaintiff found out she was the only one in the building given the survey.

31. Out of fear for her safety, in or about April 2018, Plaintiff met with Superintendent Greg Milbrand to express her concerns about Mr. Sims' actions and Mr. Milbrand felt that Mr. Sim was in the wrong and owed Plaintiff an apology.

32. Mr. Milbrand believed that having closed door meetings and being reprimanded without a union representative presented violations of labor laws. However, Mr.

Milbrand did not confront the issues of holding Plaintiff against her will, stalking her, or invading her personal privacy.

33. Mr. Milbrand subsequently held a meeting where Mr. Sim, the Plaintiff, and her union representative, Chuck Brestensky, were all present. However, Mr. Sim did not apologize but only made the Plaintiff feel more uncomfortable since at one point during the meeting he told her that he loved her.

34. In the summer of 2018, a new Superintendent, Donna Dunar, was hired and Plaintiff had an opportunity to articulate her concerns about Mr. Sim.

35. In or about October 2018, Ms. Dunar informed Plaintiff that she might be getting a call from an East Pennsboro Police Detective as she had received reports from several other employees about Mr. Sim's behavior and felt that some might be considered criminal. However, the Plaintiff never received a call.

36. On October 24, 2018, EPASD accepted the resignation of Mr. Sim, yet reserved the right to hold him for 60 days as per the Collective Bargaining Agreement.

37. However, nothing was to done to resolve the Plaintiff's emotional distress or the damage caused by Mr. Sim's actions and the EPASD's failure to promptly correct or remedy the reported harassment.

38. In November 2018, Mr. Sim expressed to the entire faculty at a meeting that he believed the rapport at the school was irreparably broken and that he was leaving.

39. Unfortunately, Plaintiff never received an apology or resolution and Mr. Sim was allowed to resign to accept new positions in other school districts.

40. Plaintiff continued to suffer night terrors and rashes upon entering the school building coupled with high anxiety.

41. Plaintiff tried to remain in her position for the rest of the school year but felt all alone and a sense of betrayal since nothing was done about the pain Mr. Sim has caused her.

42. This left Plaintiff with no clear remedy for the physical and emotional harm that had been caused and Plaintiff was ostracized and detested by certain members of the staff and administration for having reported her concerns.

43. Consequently, Plaintiff left the teaching profession due to the hostilities and failure of the EPASD to remedy the matter.

44. EPASD is liable for the actions of its agents under a theory of *Respondeat Superior*.

**COUNT 1**
**REHABILITATION ACT DISCRIMINATION**
**Plaintiff v EPASD**

45. Plaintiff incorporates herein the previous averments as if fully set forth.

46. The Rehabilitation Act prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

47. Plaintiff's requests for an accommodation (medical leave due to a hostile work environment and for assistance due to the anxiety caused by Mr. Sims' surveillance and invasions into her private life) in the workplace constitute "protected activity" pursuant federal law.

48. EPASD discriminated against the Plaintiff on account of her protected activity when it failed to promptly prevent or correct the behavior of Mr. Sim especially when it knew of his propensity to cause harm and knew about his harassment of the Plaintiff.

49. The Plaintiff avers that EPASD's inaction and its purported basis to discipline her (e.g. that she was not effectively performing her job) was false and erroneous.

50. As a result of all of the above, the Plaintiff avers that EPASD discriminated against her on account of her protected activity by imposing disciplinary measures and sanctioning Mr. Sims' invasion of her private life and her health.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and any other applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the Plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

## COUNT 2
## REHABILITATION ACT
## HOSTILE WORK ENVIRONMENT
### Plaintiff v EPASD

51. Plaintiff incorporates herein the previous averments as if fully set forth.

52. The Plaintiff avers that she is a qualified individual with a disability under the Rehab Act due to her heart conditions, anxiety and depression and EPASD's notice of the same.

53. Additionally, the Plaintiff was under a physician's care for her disabilities since she was diagnosed.

54. The Plaintiff was subject to unwelcomed harassment after her reports of Mr. Sim's treatment in October and November 2017 and in March and April 2018.

55. Further, Plaintiff was subjected to further humiliation and harassment when school officials failed to correct or remedy the ongoing harassment by EPASD officials, and Mr. Sim, after her report regarding the treatment she received on numerous dates in 2017 and 2018 including March 2018 by Mr. Sim.

56. Further, after she had made a report of harassment, she was intimidated by school officials including but not limited to Mr. Groff.

57. Further, Plaintiff was subjected to a hostile work environment when agents of EPASD intentionally, negatively, and callously communicated within the school about the plaintiff's health issues and alleged negative performance.

58. The harassment is based on Plaintiff's disability because the surveillance of Mr. Sim included his discussions about her health and absences as well as negative statements about her health conditions.

59. Further, EPASD agents disparaged her and her professionalism after they had knowledge of her heart condition and her anxiety.

60. Further, the harassment was sufficiently severe or pervasive and altered the conditions of Plaintiff's employment creating an abusive and hostile working environment.

61. EPASD knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead sanctioning or allowing adverse action against the Plaintiff by Mr. Sim and Mr. Groff whom further disciplined and berated her due to her conditions.

62. The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability against EPASD for her claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and all applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the plaintiff, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs.

11

## COUNT 3
## REHABILITATION ACT RETALIATION
### Plaintiff v EPASD

63. Plaintiff incorporates herein the previous averments as if fully set forth.

64. The Rehabilitation Act prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace, or to have otherwise opposed practices made unlawful under the law.

65. The Plaintiff requests for an accommodation in the workplace under medical leave as well as requesting that EPASD demand Mr. Sim cease his surveillance, texts, and invasions and "meetings" which caused her high anxiety by exacerbating her heart condition and anxiety constitute "protected activity" pursuant to state and federal law.

66. EPASD retaliated against the Plaintiff on account of her protected activity.

67. The Plaintiff avers that EPASD's purported basis to discipline her (e.g. that she was not effectively performing her job) was false and erroneous and that EPASD made no attempt to prevent or remedy the ongoing harassment of the Plaintiff, even after she sought assistance by specifically reporting the actions of Mr. Sim.

68. As a result of all of the above, the Plaintiff avers that EPASD retaliated against her on account of her protected activity by permitting Mr. Sim to continue causing her pain, suffering and humiliation and allowing him to impose disciplinary measures

and retaliate after she reported his invasions into her private and health related affairs.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and any other applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the Plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

**COUNT 4**
**FOURTH AMENDMENT ILLEGAL SEARCH AND SEIZURE**
**42 U.S.C. § 1983**
**Plaintiff v. EPASD and Michael Sim**

69. Plaintiff incorporates herein the previous averments as if fully set forth.

70. The Fourth Amendment states: "[t]he right of the people to be secure in their ***persons***, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." Further, "[t]he Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and ***invasive acts*** by officers of the Government [.]" *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (emphasis added).

71. EPASD, based upon its illegal policies or customs, or lack thereof, individually and collectively, acted and/or validated the action(s) of, and intentionally intruded upon the Plaintiff's privacy in that they permitted Mr. Sim to surveil the Plaintiff, text the Plaintiff regarding matters unrelated to her workplace during

work and non-work related time frames, and to harass Plaintiff about her personal privacy while refusing to allow her to leave a room where she was alone and the door shut after school hours had ended.

72. The Plaintiff had a subjectively and objectively reasonable and legitimate expectation of privacy in her person and personal life including her right to be free from an unjustified invasion into the contents of her private life and her private social media account when Mr. Sim sought private information against the Plaintiff to use to harass her at work.

73. A reasonable person would find the actions of a state actor to intentionally, maliciously, and willfully intrude into the Plaintiff's personal life and the contents of her social media for personal reasons unrelated to her school activities to be highly offensive and/or morally reprehensible to any reasonable person.

74. The Defendant had no justification for allowing Mr. Sim to invade the Plaintiff's privacy, as more fully described above, and forcing her to endure the pain, suffering and humiliation of being surveilled and placed under intense scrutiny and anxiety for this reason.

75. In this regard EPASD was intentionally or deliberately indifferent to the Plaintiff's privacy rights.

76. Further, Plaintiff did not and could not have consented to such a surveillance of her private life and search of her social media (for personal use by the Principal, Mr. Sim).

77. Additionally, she was forced to respond to intrusive questioning about her private life and her social media posts which had no connection to anything related to her work under threat, explicit or implied, of termination or physical harm.

78. Wherefore, Plaintiff has suffered damages and demands judgment in her favor to the fullest extent of the law.

### COUNT 5
### PENNSYLVANIA COMMON LAW CLAIMS
### (FALSE IMPRISONMENT - CIVIL)
### Plaintiff v. Individual Defendant Only

79. Plaintiff incorporates herein the previous averments as if fully set forth.

80. False imprisonment is the unlawful restraint of a person without consent or legal justification.

81. False imprisonment can be committed by words, acts, or by both.

82. The common law tort of false imprisonment is defined as an unlawful restraint of an individual's personal liberty or freedom of movement.

83. In order to constitute the wrong it is *not necessary* that the individual be actually confined, or assaulted.

84. It is to be noted that, there is no necessity in a false imprisonment case to prove that a person used physical violence, or laid hands on another person.

85. It is sufficient to show, that at any time or place, the person in any manner deprived another person of his/her liberty without sufficient legal authority.

86. The principal element of damages in an action for false imprisonment is the loss of freedom.

87. Here, the Plaintiff was held for a significant period of time, against her will, in a school classroom after school hours by Mr. Sim, who caused fear for her safety and/or life, anxiety and nervousness as a result of the detention.

88. There was no lawful basis for the detention or restraint.

89. Plaintiff suffered extreme and severe emotional distress including physical suffering, mental suffering and humiliation, post-traumatic stress disorder, heart palpitations, loss of time and interruption of her business, reasonable and necessary expenses incurred for therapy, and Plaintiff's reputation was injured thereby.

90. Mr. Sim was intentional and malicious in his actions to retain Plaintiff permitting an award of punitive damages against him personally.

**COUNT 6**
**PENNSYLVANIA COMMON LAW CLAIMS**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
**Plaintiff v. Individual Defendant Only**

91. Plaintiff incorporates the previous averments as if fully set forth.

92. Plaintiff has suffered irreparable severe and emotional distress and harm by the intentional and/or reckless conduct of the Individual Defendant.

93. The Individual Defendant expressed extreme and outrageous conduct towards the Plaintiff at a time when she was in great distress and pain regarding her health conditions: heart palpitations and anxiety.

94. The Individual Defendant showed utter disregard for Plaintiff's frail condition, intentionally and/or recklessly demeaning the Plaintiff by his actions and conduct.

95. The Individual Defendant's outrageous conduct, as more fully described above, evidenced extreme disregard for Plaintiff's medical condition and caused the Plaintiff humiliation during severe and disabling mental health conditions in a manner that disrupted her treatment plan and caused severe emotional distress by adding insult to injury and the burden of an unjustified invasion into her private life.

96. The Individual Defendant's actions as more fully set forth above, were extreme and outrageous.

97. As a direct and proximate result of the Individual Defendant's extreme and outrageous conduct, as more fully set forth above, plaintiff suffered post-traumatic stress disorder and severe emotional distress, including but not limited to complications of, and exacerbations of her mental and physical health

conditions as more fully noted above.

98. As a direct and proximate result of the Individual Defendant's extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered heart palpitations, post-traumatic stress disorder and severe emotional distress, which resulted in symptoms including but not limited to feelings of fright, nightmares, shock, humiliation, severe anxiety, outrage, guilt, depression, panic, and diminished self-esteem.

99. As a direct and proximate result of the emotional distress, as more fully set forth above, Plaintiff sustained bodily harm, including but not limited to post-traumatic stress disorder, shortness of breath, gastrointestinal upset, increased heart rate with palpitations, insomnia, severe anxiety, and the exacerbation and deterioration of her mental health condition and prior treatments.

100. Plaintiff required, sought and received medical treatment, including mental health counseling for the aforesaid emotional distress and resulting injuries.

101. As a direct and proximate result of said injuries, Plaintiff has endured pain and suffering, great mental anguish, and will endure additional pain and suffering in the future, and claim is made therefor.

102. As a direct and proximate result of said injuries, Plaintiff has suffered a loss of life's pleasures and enjoyment and claim is made therefor.

103.        As a direct and proximate result of said injuries, Plaintiff has suffered

great humiliation and embarrassment, and claim is made therefor.

104.        As a direct and proximate result of said injuries, Plaintiff has incurred

liability for medical expenses, psychiatric/psychological counseling expenses,

and will incur such expenses in the future, and claim is made therefor.

105.        The actions of the Individual Defendant, as more fully described

above, constitutes extreme and outrageous conduct that evidenced a wanton

disregard for the safety and wellbeing of Plaintiff and which were undertaken

with the direct intent to harm Plaintiff, and/or callous disregard for Plaintiff's

wellbeing, thereby warranting the imposition of punitive damages and claim is

made therefor.

   **WHEREFORE,** Plaintiff requests this Honorable Court to enter judgment in

her favor and against the Individual Defendant for:

   1.    Actual and Compensatory damages;

   2.    Punitive damages; and

   3.    Any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on her Causes of

Action as specified below.

106.   Plaintiff prays that the Court issue injunctive relief enjoining EPASD, its officers, agents, employees, and all others acting for, or succeeding EPASD, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against the Plaintiff in violation of the Rehab Act on the basis of her disability.

107.   The Plaintiff prays that the Court issue an injunction ordering and requiring that EPASD formulate, institute, adopt and maintain policies and practices which will provide equal employment opportunities to the Plaintiff and other current disabled employees or future disabled employees and applicants for employment, and which will to the extent practicable remedy the continuing effects of past discrimination against the Plaintiff and other disabled Americans and restore them to the employment status and position they would have held and enjoyed but for the unlawful discrimination complained of herein.

108.   The Plaintiff prays that the Court award monetary relief as follows:

109.   On her Causes of Action, order EPASD to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under the Rehab Act,  as applicable, and in an amount to be proven at trial;

110.   The Plaintiff prays that the Court award her costs, expenses and attorneys' fees, payable by EPASD as to the Rehab Act counts, as follows:

111.   By determining that the Plaintiff is a prevailing party on her Causes of Action and thereupon awarding the Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

112.   The Plaintiff prays that the Court award further monetary relief as follows:

113.   The Plaintiff prays that the Court order EPASD to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

114.   The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that EPASD has fully complied with the injunctions requested herein and has remedied to the greatest extent practicable the discriminatory policies and practices complained of herein, and that EPASD is operating in full compliance with the requirements of the Rehab Act with regard to its employment policies and practices.

115.   The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation and punitive damages as applicable under her causes of action regarding the Individual Defendant, Mr. Sim.

116.   The Plaintiff prays that the Court award all appropriate pain, suffering and humiliation damages under her causes of action as applicable regarding EPASD.

117.   The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated: October 30, 2019

Respectfully submitted,

DONHAM LAW

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, Esquire
Attorney I.D. No. 206980
PO Box 487, Dellslow, WV 26531
717.881.7855 (phone)
888.370.5177 (fax)